**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND SERVICE WORKERS,
INTERNATIONAL UNION LOCAL 2-232 AFL-CIO, CLC,

         Plaintiff,

                    Case No. 07-C-824

  -vs-

BRIGGS & STRATTON CORPORATION,

         Defendant.

## DECISION AND ORDER

This matter comes before the Court on cross motions for summary judgment. The plaintiff, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union Local 2-232 (the "Union"), moves to compel arbitration with the defendant, Briggs & Stratton Corporation ("Briggs"). For the reasons that follow, Briggs' motion is granted, the Union's motion is denied, and this matter is dismissed.

### BACKGROUND

The Union is a labor organization which represents certain Briggs employees. Briggs is a Wisconsin corporation which maintains offices in Wauwatosa, Wisconsin. The Union and Briggs have been parties to collective bargaining agreements ("CBA") for at least thirty (30) years. Article IV of the applicable CBA sets forth the procedure by which "complaints

or grievances which may arise between the Company and the Union or between the Company and any employee or group of employees shall be handled . . ." Since 1970, the CBA has contained an arbitration provision. Section 2 of the CBA provides, "with the exception of grievances concerning the incentive system outlined in this contract, all grievances between the two parties shall be deemed arbitrable." The CBA further provides that "the decision of the arbitrator shall be final and binding."

On January 1, 1947, Briggs instituted the Briggs & Stratton Retirement Plan. The Retirement Plan applies to both Union and non-Union employees. The Retirement Plan consists of two documents: the Retirement Plan itself, and a Summary Plan Description ("SPD"). Since at least 1950, the CBA has contained language stating that "The existing Retirement Plan as amended by this agreement will be maintained during the term of this agreement."

Since July 31, 1980, the CBA has contained a "Retirement Plan Summary of Benefits." The summary was added as a result of the Union's request to include the text of the Retirement Plan in the CBA as a matter of convenience and ease of reference. The summary is a four-page overview of retirement benefits. It provides that the "following summary outlines benefits available. For more detailed information, please refer to your Retirement Plan Booklet or call the Retirement Benefits Administrator, phone 259-5384. The Plan consists of a legal document and trust agreements. In case of any conflicts between the summary and the Plan, the terms of the Plan will control."

Among other benefits, the Retirement Plan provides for a pension for some retiring employees, and includes a special early retirement provision which allows employees to retire with a full pension after 30 years of service. The Retirement Plan provides:

> The Retirement Committee shall establish and administer a reasonable written procedure for the filing of claims (requests for benefits) by Participants. . . . The Retirement Committee shall provide written notice to any Participant . . . whose claim for benefits under the Plan has been denied, setting forth the specific reasons for such denial, and shall afford a reasonable opportunity to any Participant . . . for a full and fair review of the decision denying the claim in accordance with such regulations as may be issued by the Secretary of Labor and consistent with the claims procedure established by the Retirement Committee.

The SPD, in turn, establishes the detailed procedure for how employees should seek retirement benefits and appeal adverse retirement benefits decisions. The Retirement Committee will notify the employee within 90 days of its decision regarding retirement benefits. The employee has 60 days to appeal a denial and to submit any additional information. The Retirement Committee then conducts another review of the evidence and determines anew whether the employee is entitled to retirement benefits.

On November 6, 2003, a grievance was filed concerning Jeffrey Raddatz, a Union member. The grievance states, "I was not able to retire. The Company refused to recognize my time on industrial injury and layoff limitations as credited service toward my pension. I wish to be made whole. This is a policy grievance and is continuing." Mr. Raddatz did not follow any of the dispute resolution procedures outlined in the SPD. Rather, Mr. Raddatz approached the Union and the Union filed the grievance under the CBA's dispute resolution

-3-

Case 2:07-cv-00824-RTR   Filed 11/03/08   Page 3 of 9   Document 43

procedures. Briggs denied the grievance during the grievance procedure. On July 19, 2004, the Union notified Briggs that it was submitting the grievance to arbitration. The grievance was held in abeyance in an effort to resolve the grievance by voluntary agreement of the parties. Eventually, Briggs refused to submit to arbitration.

**ANALYSIS**

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Federal courts have jurisdiction to order arbitration of disputes arising under collective bargaining agreements. *See* 29 U.S.C. § 185; *United Steelworkers v. American Mfg., Co.*, 363 U.S. 564 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960). The Court must compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Int'l Union v. Trimas Corp.*, 531 F.3d 531, 536 (7th Cir. 2008) (quoting

*Warrior & Gulf*, 363 U.S. at 582-83). Where the arbitration clause is broad, there is a presumption in favor of arbitrability. *Id.* Any "ambiguities as to the scope of the arbitration clause are resolved in favor of arbitration." *Volt Info. Sci., Inc. v. Board of Trs. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 475-76 (1989).

On the other hand, arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Comms. Workers*, 474 U.S. 643, 648 (1986). Therefore, when there is "forceful evidence" of an intent to exclude a claim from arbitration, courts cannot compel parties to arbitrate a dispute. *See Printing Specialties and Paper Prods. Union Local 680 v. Nabisco Brands, Inc.*, 833 F.2d 102, 104 (7th Cir. 1987) (citing *AT&T Tech.*, 475 U.S. at 650).

The arbitration clause in the instant case is quite broad, providing that "all grievances between the two parties shall be deemed arbitrable." The CBA also provides that the "Retirement Plan as amended by this agreement will be maintained during the term of this agreement." The Union argues that the Raddatz grievance relates to "maintenance" of the Retirement Plan. The Union asserts that the grievance somehow relates to a policy change in calculating pension benefits, which is a violation of Briggs' duty to maintain the Retirement Plan.

However, in *Nabisco,* 833 F.2d at 104-05, the Seventh Circuit held that a grievance regarding a class of employees' claims to early retirement benefits was not subject to arbitration. The court found "a wealth of forceful evidence, consisting of the Pension Plan's independence from the [CBA], the bargaining history of the parties, and the lack of Pension

-5-

Plan terms in the [CBA], of a purpose to exclude claims of entitlement to early retirement benefits from arbitration." *Nabisco*, 833 F.2d at 104.

Similar to *Nabisco*, the Retirement Plan in the instant case is wholly separate from the CBA, and it contains its own appeal procedure for benefit disputes. *See Nabisco* at 105 ("the Pension Plan is all inclusive in that it prescribes and sets forth its own plan or formula for determining benefits and administering grievances"). The Retirement Plan is mentioned in the CBA, but the Retirement Plan and the SPD are the controlling documents with respect to retirement benefits. *See id.* at 105 ("passing reference to the Pension Plan in the [CBA] does not bring specific pension disputes . . . under the umbrella of the arbitration clause of the agreement"). The bargaining history between the Union and Briggs establishes that disputes over retirement benefits are reserved for the Retirement Committee, not arbitration.[1]

The Union relies on *Local 232, Allied Ind. Workers of America, AFL-CIO v. Briggs & Stratton Corp.*, 837 F.2d 782 (7th Cir. 1988), where the Seventh Circuit considered the exact same language at issue in the instant case. In *Briggs*, the Union filed a grievance alleging that unilateral changes to improve benefits for non-union employees under the Retirement Plan violated the CBA. The court held that this was an arbitrable dispute:

> Article XII, § 5(d) states that 'the existing Retirement Plan . . . will be maintained during the term of this agreement.' The 'existing Retirement Plan' covers both union and non-union employees. It does not distinguish between these two

---

[1] As reflected in the bargaining minutes, the Union's request to have a summary included with the CBA was motivated by convenience and ease of reference. "Union: Any objection to [having one book]? . . . It makes it easier. Maybe just a few pages with highlights. Briggs: Maybe a summary – it just adds printing costs." *See* D. 19, Briggs' Proposed Findings of Fact, ¶ 29. *See also id.* at ¶ 30 ("Union: It is handy. At least we could have just a summary section in the back with the basic rights on pension, insurance, S&A or something").

-6-

> categories. In other words, Article XII, § 5(d) does not say that
> the retirement plan will be maintained as *to union employees*.
> Changes that affect non-union employees arguably constitute a
> failure to maintain the plan. To resolve this issue would require
> us to construe the term 'maintained' and would lead us to the
> merits of the dispute.

*Briggs*, 837 F.2d at 786 (emphasis in original). However, the court later distinguished *Nabisco* because "Briggs & Stratton *actually altered the terms of the retirement plan*. In other words, Local 232's grievance actually focuses on the one aspect of the retirement plan that is specifically addressed in the collective bargaining agreement – maintaining the plan." *Briggs*, 837 F.2d at 788 (emphasis added).

In the instant case, the Union is attempting to shoehorn this dispute into the holding of *Briggs* by characterizing Raddatz's claim for eligibility as a "policy grievance." This mere change in nomenclature does not address the salient issue – namely, whether Briggs altered the terms of the Retirement Plan, thereby implicating its duty under the CBA to "maintain" the Retirement Plan.[2] Briggs' eligibility determination with respect to Raddatz (and any similarly situated employee) does not change the terms of the Retirement Plan. Eligibility is a matter of interpretation, separately reserved for the Retirement Committee. *See International Ass'n of Machinists and Aerospace Workers, Dist. 10 v. Waukesha Engine Division, Dresser Ind., Inc.*, 17 F.3d 196, 198 n.1 (7th Cir. 1994) (distinguishing *Briggs* because "there was no change in the terms of the Benefits Plan, and therefore no failure by

---

[2] As discussed in *Briggs*, this could be done in a variety of ways, none of which are implicated by the instant case: "In *Nabisco* we spoke of relatively drastic action – failing to fund the plan or terminating the plan – as examples of what would constitute a failure 'to continue' the plan under the [CBA]. Briggs & Stratton's amendments to the retirement plan are not identical to these examples, yet the changes arguably still constitute a failure to maintain the plan." *Briggs*, 837 F.2d at 787-88.

-7-

[the employer] to maintain the Benefits Plan as provided in the [CBA]"); *United Steelworkers of America v. Commonwealth Aluminum Corp.*, 162 F.3d 447, 453 (6th Cir. 1998) (*Briggs* did not "involve a dispute over a determination of eligibility for payment of a claim for benefits," nor did it address "the question of whether the claims were excluded from arbitration by a claims review procedure").

The Union insists that the terms of the Retirement Plan *were* changed because it was administered differently prior to the Raddatz grievance. Before the grievance, employees who retired from layoff or from leave due to disability received pension benefits for the time they were on layoff or leave. A person retiring from leave or layoff was essentially considered returned at the time of retirement. From the time of the Raddatz grievance, Briggs denied pension credit for leave when an employee retired from leave status.

This gloss on the factual scenario does not bring it under the umbrella of *Briggs*. Rather, it falls under *Nabisco* because the claim presented by the Raddatz grievance relates to "the definition of the specific terms used in the pension plan." *Briggs* at 787. Even if Briggs' interpretation of those terms changed over time, the CBA contemplates that the proper interpretation of those terms is an issue left to the procedures outlined in the Retirement Plan and the SPD, not arbitration. *See Dresser*, 17 F.3d at 198 ("the fact that the Plan expressly provides for an alternative review procedure indicates that the parties did not intend to arbitrate disputes concerning the denial of benefits").

-8-

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Briggs' motion for summary judgment [D. 18] is **GRANTED**;

2. The Union's motion for summary judgment [D. 12] is **DENIED**; and

3. This matter is **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 3rd day of November, 2008.

            **SO ORDERED,**

            *s/ Rudolph T. Randa*
            **HON. RUDOLPH T. RANDA**
            **Chief Judge**